## HOWARD v. NORTHERN CENT. RY. CO.

*(Supreme Court, General Term, Fifth Department. June 23, 1888.)*

1. RAILROAD COMPANIES—ACCIDENTS AT CROSSINGS—CONTRIBUTORY NEGLIGENCE.
      Plaintiff was struck and run over at a railroad crossing, in the night-time, by detached passenger coaches, which appear to have been lighted up within, the light shining out through the car windows, and which were being run down on a branch track, near the north side of an open street, affording an unobstructed view of the track, in charge of two trainmen, one of whom carried an ordinary brakeman's lantern, on the front platform of the forward car. It appeared that the cars were running at the rate of about five miles per hour; that plaintiff walked down the south side of the street towards the crossing, in the same direction the cars were coming; and, from the preponderance in the testimony of disinterested witnesses, that he approached the track diagonally, neither looking to the right nor to the left, thus having his back to the approaching cars. *Held*, that he was guilty of contributory negligence.[1]

2. SAME—TRAIN RUNNING OFF SCHEDULE TIME.
      The fact that the train was late did not excuse the neglect of plaintiff to look and listen before crossing the track, particularly when, from all the circumstances of the case, plaintiff must have known that fact.[1]

Appeal from circuit court, Wayne county.

Action by William Howard against the Northern Central Railway Company for personal injuries. Defendant company appeals from a judgment for plaintiff, and order denying the motion for a new trial.

Argued before BARKER, P. J., and HAIGHT and BRADLEY, JJ.

*George W. Diven*, for appellant. *J. W. Dunwell*, for respondent.

HAIGHT, J. This action was brought to recover damages for a personal injury received at a highway crossing at the village of Sodus Point. In that village a branch track leaves the main track a short distance east of the defendant's station, and runs east to the bay, on the northern side of Scentell street. At a distance of 510 feet from the switch, the Lyons, or Alton, road crosses the branch track at nearly right angles. The post-office is located on the south side of Scentell street, about half way between the station-house and the Lyons, or Alton, road; and Scott's meat-market is located between the post-office and that road. At about a quarter to 9 o'clock of the evening

[1] See note at end of case.

of September 25, 1887, the plaintiff left the post-office, and walked down on
the sidewalk to Scott's meat-market. He then left the meat-market, and
walked down to the Lyons, or Alton, road; then turned, and crossed Scentell
street to the branch track, and, while crossing the branch track, was struck
by the cars, knocked over, and one of his feet crushed, rendering an amputa-
tion of the toes necessary. The mail train had shortly before arrived upon
the main track; had discharged its passengers; and two coaches were switched
upon the branch track, to be run down to the bay. The grade descended
from the switch down to the bay, and the cars were being run down by
the force of gravity. Upon the platform of the forward end of the coach,
as they were running down to the bay, were two brakemen, one holding an
ordinary railroad lantern, and the other holding the brake. The interior of
the cars was lighted, and the light shone through the windows. There were
12 or 15 persons that left the post-office at about the same time, and were
walking along down the sidewalk in company with the plaintiff, to the place
of the accident. The plaintiff lived in the village, and was familiar with the
crossing in question, and he testified that before attempting to cross the track,
that he looked both ways to see if there was any train; but he saw and heard
none, and did not see the cars until he was struck. Most of the other wit-
nesses present saw and heard the cars approach, and four or five testified that
they heard the brakeman upon the cars halloo a warning to persons crossing
the track. Some of the witnesses testified that they saw the plaintiff when
he approached the track; that he walked diagonally across the street, and
started upon the track without looking to the right or left for the approach
of cars. These witnesses were mostly residents of the village, who had been
to the post-office to get their mail, and were not connected with the defend-
ant corporation. There was no obstruction from the Lyons, or Alton, road
that prevented a view of the track, or of the cars running upon it up to the
switch. The cars were running down upon the north side of the street. The
plaintiff, with 12 or 15 others, was walking down upon the sidewalk in the
same direction, upon the south side of the street. The cars were running at
the rate of from four to five miles per hour, or a little faster than a man would
walk. The plaintiff, in walking down the sidewalk, had his back to the ap-
proaching cars; and, if he crossed the street diagonally, still had his back par-
tially in that direction. There is some variance in the testimony of the wit-
nesses, but those of the plaintiff and of the defendant substantially agree
upon the main facts. When the plaintiff rested, the defendant moved for a
nonsuit upon the ground that the evidence established the fact that the plain-
tiff was guilty of contributory negligence, and that it failed to show that the
defendant was negligent. The court denied the motion, and at the conclu-
sion of the evidence the defendant renewed the motion, upon the same grounds,
which was also denied, and exception taken. The question is thus presented
as to whether the plaintiff was guilty of contributory negligence which con-
tributed to or caused the injury in question.

It is well settled that an individual, in approaching upon the highway a rail-
road crossing, is approaching a known place of danger, and the duty devolves
upon him of making use of his eyes and ears for the purpose of determining
whether or not trains are approaching; and, in failing to do so, he cannot re-
cover for injuries received. It was a dark night, but the evidence is over-
whelming, on the part of both the plaintiff's and defendant's witnesses, that
there was a light upon the forward platform of the approaching cars; that
they were lighted inside, and the light shone through the windows; that, in
running down to the bay, the rumble of the wheels made a noise that was dis-
tinctly heard by many of the persons in the company. It would seem that
under such circumstances that, if the plaintiff had looked back upon the track
before attempting to cross, he must of necessity have seen the approaching
cars as they were coming down upon the opposite side of an open street, with

no obstacle to obstruct his view. The theory of the defense, which is in accord with the declarations of the plaintiff, as testified to by some of the officers of the defendant, to the effect that his mind was absorbed, and that he was walking along without thinking of the railroad crossing or looking up, presents to our mind the rational explanation of his conduct on that occasion. If we are correct in this conclusion, it follows that the plaintiff was guilty of negligence in entering upon the railroad track without looking and listening, as he was in duty bound to do. Upon this question the case of *Woodard* v. *Railroad Co.*, 106 N. Y. 369, 13 N. E. Rep. 424, appears to be controlling. In that case a freight car had been kicked or pushed down from the west, and was moving, by its own momentum, at the rate of about four miles an hour, down a branch track in the village of Hornellsville, and across one of the streets of that village at quite an acute angle. A building stood within 31 feet of the track, and, after passing the building, the track could be seen a distance of only 57 feet; and within 10 feet of the track it could be seen 137 feet. Upon the further side of the branch track a train was crossing the highway, going west upon another track. The plaintiff was engaged in carrying a bushel basket full of coal. He passed along the sidewalk onto the track, and was struck by the freight car, and killed. It was held that his administratrix could not recover, and the judgment was reversed; that, had he looked, it was absolutely certain that he must have seen the car coming. To our mind the facts of that case make a stronger case for the plaintiff than the facts disclosed in this case. In that case the deceased was approaching the railroad track at an acute angle. It was obstructed from view but for a short distance. He was engaged in carrying a basket of coal, and might have had his attention diverted by the passing train upon another track, the noise of which prevented his hearing the approach of the car which caused his death. But in this case nothing but the darkness could obscure the vision; and that could not obscure the lights upon the train, which shone through the windows of the cars. No other train was passing to attract attention; neither was the plaintiff engaged in carrying a heavy package, which required the exercise of a large portion of his strength.

The trial judge, in his charge, comments upon the fact that the train arrived that evening two hours late, and submitted to the jury the question as to whether or not this circumstance might not reasonably have released the plaintiff, in a measure, from the degree of precaution which might otherwise be required of him. It appears to us that this circumstance did not excuse him. The station was but a short distance away, in view of the plaintiff. There were but a few buildings in the village at this place to obstruct the vision. The train that arrived was the train bringing the mail, which could not be distributed at the post-office until its arrival. The plaintiff, with 12 or 15 others, as we have seen, were at the post-office to get the evening mail, and it is hardly possible that they could be deceived as to the time that the train and mail arrived. But, whether they were or not, a railroad track is a known place of danger, and trains are liable to be run over it out of schedule time. So that, whether it is train-time or not, the duty exists of looking and listening for the approach of a train before crossing the track.

The motion for a nonsuit or a direction of a verdict for the defendant should have been granted. The judgment and order should consequently be reversed, and a new trial ordered; costs to abide event. So ordered.

BARKER, P. J., and BRADLEY, J., concur.

NOTE.

RAILROAD CROSSINGS—DUTY OF TRAVELER TO LOOK AND LISTEN. It is the duty of a person about to cross a railroad track to make a vigilant use of his senses, as far as there is an opportunity, in order to ascertain if there is a present danger in crossing. Railway Co. v. Adams, (Kan.) 6 Pac. Rep. 529; Starry v. Railroad Co., (Iowa,) 1 N. W.

Rep. 605; Abbott v. Railway Co., (Minn.) 16 N. W. Rep. 266; Clark v. Railway Co., (Kan.) 11 Pac. Rep. 134; Railroad Co. v. Davis, (Kan.) 16 Pac. Rep. 78; Donohue v. Railway Co., (Mo.) 2 S. W. Rep. 424; Mynning v. Railroad Co., (Mich.) 31 N. W. Rep. 147; Harris v. Railway Co., (Minn.) 33 N. W. Rep. 12; Pennsylvania Co. v. Marshall, (Ill.) 10 N. E. Rep. 220; Glascock v. Railroad Co., (Cal.) 14 Pac. Rep. 518; Young v. Railway Co., (N. Y.) 14 N. E. Rep. 434. A failure to listen or look, when by taking this precaution the injury might have been avoided, is negligence that will bar a recovery, notwithstanding the negligence of the railroad company in failing to give signal, contributed to the injury. Railway Co. v. Adams, (Kan.) *supra;* Schofield v. Railway Co., 8 Fed. Rep. 488; Holland v. Railroad Co., 18 Fed. Rep. 243; Mynning v. Railroad Co., *supra.* The diligence required of the traveler in ascertaining the approach of a train to a highway crossing must be greater accordingly as the peculiar locality and the circumstances of the case seem to require greater caution. Morris v. Railroad Co., 26 Fed. Rep. 22. The fact that the approach of a railroad to a highway is obstructed from view imposes upon travelers by the highway special care to avoid collisions. Haas v. Railroad Co., (Mich.) 11 N. W. Rep. 216; Schaefert v. Railway Co., (Iowa,) 17 N. W. Rep. 893; Burns v. Rolling-Mill Co., (Wis.) 19 N. W. Rep. 380; Pence v. Railroad Co., (Iowa,) 19 N. W. Rep. 785. Where a crossing is particularly dangerous, and requires extraordinary effort to ascertain whether it is safe to cross, one familiar with the locality and the danger surrounding it must use care proportioned to the probable danger. Railroad Co. v. Butler, (Ind.) 2 N. E. Rep. 138; Merkle v. Railroad Co., (N. J.) 9 Atl. Rep. 680; Seefeld v. Railway Co., (Wis.) 35 N. W. Rep. 278. Where the driver of a team brought his horses to a walk, but did not stop and leave his wagon, and go forward where he could not see a train obstructed by cars standing on a side track, held not to be contributory negligence. Kelly v. Railway Co., (Minn.) 11 N. W. Rep. 67; Guggenheim v. Railway Co., (Mich.) 33 N. W. Rep. 161. Where the approach to a crossing was obstructed, and the plaintiff's attention was required in one direction, held, under the circumstances, he was not negligent for failing to look in the opposite direction, from which a train was rapidly approaching, without signal, bell, or whistle. Loucks v. Railway Co., (Minn.) 18 N. W. Rep. 651. Where one knows the dangerous condition of a crossing, that the approach of a train would be obstructed to both sight and sound, and also knew, or had reason to know, that a train is due, it is his duty to both look and listen, and, if need be, to stop for that purpose. Tucker v. Duncan, 9 Fed. Rep. 867. But there may be circumstances which will excuse the traveler from taking the usually necessary precaution of looking and listening. Railroad Co. v. Hedges, (Ind.) 7 N. E. Rep. 801; Abbott v. Railway Co., *supra.*

See, also, respecting the duty of the traveler at railroad crossings, Durbin v. Navigation Co., (Or.) 17 Pac. Rep. 5; Powell v. Railroad Co., (N. Y.) 15 N. E. Rep. 891; Schilling v. Railroad Co., (Wis.) 37 N. W. Rep. 414; Allerton v. Railroad Co., (Mass.) 15 N. E. Rep. 621; Matti v. Railway Co , (Mich.) 37 N. W. Rep. 54; Hamilton v. Railroad Co., (N. J.) 13 Atl. Rep. 29; Reed v. Railway Co., (Iowa,) 37 N. W. Rep. 149; Railroad Co. v. Lee, (Tex.) 7 S. W. Rep. 857; Railroad Co. v. Townsend, (Kan.) 17 Pac. Rep. 804; Railway Co. v. Greenlee, (Tex.) 8 S. W. Rep. 129; Cones v. Railway Co. (Ind.) 16 N. E. Rep. 638; Bloomfield v. Railway Co., (Iowa,) 38 N. W. Rep. 431.